**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2032-22

JEFFREY SLOSKY,

    Plaintiff-Respondent,

v.

VALERIE SLOSKY,

    Defendant-Appellant.

_____

Submitted March 12, 2024 – Decided July 22, 2024

Before Judges Smith and Perez Friscia.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FM-15-1744-12.

Kerr Law Group, LLC., attorney for appellant (Stacey, D. Kerr, on the brief).

Keith, Winters, Wenning & Harris, attorneys for respondent (Brian D. Winters, on the brief).

PER CURIAM

Defendant Valerie Slosky appeals from a Family Part order denying her motion to impose child support on plaintiff Jeffrey Slosky. Defendant argues the trial court erred by finding she did not establish a prima facie case of changed circumstances. We agree, and reverse and remand for further proceedings.

I.

Plaintiff Jeffrey Slosky and defendant Valerie Slosky married on March 29, 2005 and divorced on July 24, 2013. The parties share one child, E.S.,[1] born in September 2006. The parties agreed in their marital settlement agreement (MSA) to share both legal and physical custody of E.S. The parties shared fifty-fifty parenting time without litigation until 2022.

During plaintiff's parenting time on July 27, 2021, E.S., who was fourteen years and ten months old at the time, left plaintiff's home and ran approximately three miles to defendant's home. The reason for E.S. leaving plaintiff's home is disputed by the parties. Defendant certified E.S. reported an argument with plaintiff transpired while returning home from a basketball game caused by plaintiff critiquing E.S.'s performance. Plaintiff maintains that sports were not the substance of the disagreement but does acknowledge a rift between them

---

[1] In the interest of privacy, we refer to the minor child by his initials. See R. 1:38-3(d).

A-2032-22

occurred that day. Plaintiff certified that it was typical for him to critique his son's performance and it was part of their relationship and bond to discuss what he did well and what needed improvement. The parties do not dispute that E.S. has not returned to plaintiff's home for an overnight stay since the argument in July 2021.

Plaintiff provided copies of text messages showing sporadic communication between him and E.S. Days after the argument on August 3, 2021, plaintiff texted "[E.S.], when are you coming over here?" to which E.S. replied "Got your phone call. I'm not ready to talk yet but I will be soon." Plaintiff texted E.S. two more times on October 10 and 12 inviting E.S. over to his home to watch football and do homework, to which E.S. didn't respond. Plaintiff next texted E.S. on December 3, 2021, asking "Are you ready to talk over our differences? I have reached out to you twice before without a response. Your Uncle Eugene said that you haven't responded to his messages either. We have been making the effort. How about you giving it a try." E.S. responded, "Let me know when Uncle Eugene is back in town, I would like to see him first then we could take it from there." Plaintiff then texted "[E.S.], both Eugene and I are available 24/7 to talk to you." The two then had periodic contact in May and June 2022 regarding obtaining a passport and other travel documents for

3

E.S. that required plaintiff's signatures. In September 2022, E.S. wished plaintiff a happy birthday.

By October 2022, E.S. had been continuously living with defendant for over fourteen months. Defendant filed a motion seeking: sole legal custody of E.S.; the establishment of a child support obligation to be paid by plaintiff; reimbursement for extracurricular expenses; and counsel fees. Plaintiff cross-moved, seeking: denial of defendant's motion; establishment of a parenting schedule to include overnights; designated phone time for plaintiff and E.S.; details of E.S.'s tutoring and extracurricular activities from defendant; and an order requiring defendant cease all disparaging remarks about plaintiff and to encourage E.S. to participate in telephone and in-person visits with plaintiff.

The parties appeared for argument on February 17, 2023.[2] The court issued a written order that same day denying defendant's request for sole custody, child support and counsel fees, but granting her request for reimbursement for extracurricular expenses. The court also granted in part and denied in part plaintiff's cross-motion, ordering defendant to: provide plaintiff with information regarding E.S.'s tutoring and extracurriculars; cease any

---

[2] At the time of argument, E.S. was sixteen years and four months old and had been living continuously with defendant for just short of nineteen months.

4

disparaging remarks about plaintiff in front of E.S.; and encourage E.S. to enjoy telephone and in-person visits with plaintiff. The court also ordered the parties to engage in reunification therapy.

In denying defendant's request for custody and child support, the court found that the "hearsay account of the parties' child, as relayed in [d]efendant's filings, are not adequate to demonstrate a prima facie case of changed circumstances to justify the relief being sought by defendant." The court also cited plaintiff's certification that he was unaware of any long-term situation arising from the interactions with the parties' son.

Defendant appeals, contending the trial court erred by: failing to make sufficient findings of fact; improperly finding certified statements were hearsay; and failing to find changed circumstances warranting an order of child support.

## II.

We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should we interfere." Ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). "We will reverse only if we find the trial judge

clearly abused his or her discretion." Clark v. Clark, 429 N.J. Super. 61, 72 (App. Div. 2012). "While an 'abuse of discretion . . . defies precise definition,' we will not reverse the decision absent a finding the judge's decision 'rested on an impermissible basis,' considered 'irrelevant or inappropriate factors,'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571-72 (2002)), or "failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence," ibid. (quoting Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004)). However, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017).

III.

Defendant argues the trial court erred by finding E.S.'s continuous nineteen-month stay with defendant did not constitute changed circumstances. She contends the trial court focused too heavily on the disputed reason for the rift between E.S. and plaintiff rather than the uncontroverted fact that plaintiff no longer exercised parenting time. Defendant also argues the court failed to make required findings as required by Rule 1:7-4 and wrongly focused on a hearsay issue. Defendant does not argue the court erred in denying her request for sole custody, and her appeal only addresses the court's child support

6

determination.  See Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2024) ("It is, of course, clear that an issue not briefed is deemed waived." (citing State v. Shangzhen Huang, 461 N.J. Super. 119, 125 (App. Div. 2018))).

Marital settlement agreements are "entitled to considerable weight with respect to their validity and enforceability."  Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Petersen v. Petersen, 85 N.J. 638, 642 (1981)). However, the Family Part has authority under N.J.S.A. 2A:34-23 to modify alimony and child support awards.  Spangenberg, 442 N.J. Super. at 535.  The statute provides that alimony and child support orders "may be revised and altered by the court from time to time as circumstances may require."  N.J.S.A. 2A:34-23.  "Our courts have interpreted this statute to require a party who seeks modification to prove 'changed circumstances.'"  Spangenberg, 442 N.J. Super. at 536 (quoting Lepis v. Lepis, 83 N.J. 139, 157 (1980)).

Any deviation or modification must be in the best interests of the child. Ordukaya v. Brown, 357 N.J. Super. 231, 239 (App. Div. 2003).  "It is a fundamental princip[le] of the Family Division that the right to child support belongs to the child or children, not to the custodial parent."  Id. at 241 (quoting Monmouth Cty. Div. of Soc. Servs. for D.M. v. G.D.M., 308 N.J. Super. 83, 95 (Ch. Div. 1997)); see also Martinetti v. Hickman, 261 N.J. Super. 508, 512 (App.

Div. 1993) ("Each parent has a responsibility to share the costs of providing for the child.").

Consideration of "changed circumstances" includes changes in the parties' financial circumstances, whether the change is continuing, and whether the parties' agreement "made explicit provision for the change." Spangenberg, 442 N.J. Super. at 536 (quoting Lepis, 83 N.J. at 152). A significant change in custody or parenting time constitutes a change in circumstances warranting a modification in child support, Winterberg v. Lupo, 300 N.J. Super. 125, 133 (App. Div. 1997), provided the change is not temporary and "some time" has elapsed before the application to modify the responsibility to support is filed, Koelble v. Koelble, 261 N.J. Super. 190, 196 (App. Div. 1992) (quoting Ohlhoff v. Ohlhoff, 246 N.J. Super. 1, 7 (App. Div. 1991)).

Here, the trial court mistakenly exercised its discretion by finding defendant had not met her burden of establishing a prima facie case of changed circumstances. The parties agreed to an MSA that evenly divided parenting time and, on that premise, did not include a child support obligation for either party. While we acknowledge the validity and weight of MSAs, it is well settled the court may modify a child support arrangement if the party seeking the

modification can show changed circumstances.  <u>Spangenberg</u>, 442 N.J. Super. at 536 (quoting <u>Lepis</u>, 83 N.J at 157).

In this case, defendant clearly established changed circumstances. Defendant certified E.S. has lived with her continuously and without additional support from plaintiff for nearly fifteen months at the time defendant filed her motion.  While plaintiff disputes the cause of his damaged relationship with E.S., it is not material to whether changed circumstances exist.  What is material is the undisputed fact that his relationship with E.S. is strained and that he has not exercised parenting time since their argument.  Further, plaintiff does not dispute he has not provided any additional financial support and has only maintained his payment of E.S.'s health insurance premiums as agreed to in the MSA.  The new arrangement had been in place for nearly fifteen months at the time defendant filed her motion and nearly nineteen months when the trial court issued its order.  "Some time" had clearly elapsed in this case and it was clear the significant change in parenting time was not temporary.  <u>Koelble</u>, 261 N.J. Super. at 196 (quoting <u>Ohlhoff</u>, 246 N.J. Super. at 7).  We conclude defendant established a prima facie case of changed circumstances.

Plaintiff's reliance on <u>Ohlhoff</u> is misplaced.  In <u>Ohlhoff</u>, this court merely held "a child support obligation is not <u>automatically</u> abrogated when a child for

whom support is owed moves into the home of the supporting parent." <u>Ohlhoff</u>, 246 N.J. at 7 (emphasis added). Instead, <u>Ohlhoff</u> recognizes that a party must rather "obtain court approval before terminating or reducing support." <u>Ibid.</u> In other words, <u>Ohlhoff</u> would be dispositive if defendant, owing a child support duty to plaintiff, unilaterally stopped payments once E.S. moved in full time. Defendant here instead appropriately applied to the Family Part when it appeared the new parenting arrangement was permanent. Therefore, <u>Ohlhoff</u> does not foreclose defendant's requested relief.

The trial court's order appropriately included reunification therapy with the laudable goal of an eventual normalization of the relationship between plaintiff and E.S. Despite plaintiff's contention that he wasn't aware it was a permanent situation—a belief cited in the trial court's order—the record contains no suggestion of a realistic expectation of a reversion to the negotiated fifty-fifty parenting schedule in the foreseeable future. While the court was prudent to facilitate reunification via therapy, plaintiff's obligation to "proper[ly] support" his unemancipated son "to the extent he is financially able" continues in the meantime, "even though [if there is currently] no relationship between them." <u>J.R. v. L.R.</u>, 386 N.J. Super. 475, 484 (App. Div. 2006).

We reverse and remand for a plenary hearing.

I hereby certify that the foregoing is a true copy of the original on file in my office

CLERK OF THE APPELLATE DIVISION

10